UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RADUS TEK SERVICES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>IDC TECHNOLOGIES INC., et al.,<br><br>Defendants. | Case No. 5:24-cv-04793-PCP<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 20 |

Plaintiff Radus Tek Services, Inc. brings this lawsuit against defendants IDC Technologies, Inc. and Tata Consulting Services, Ltd. (TCS) for economic injury it allegedly suffered as a result of IDC's failure to pay invoices it owed for services rendered by Radus Tek employees that IDC staffed on TCS projects. TCS moves to dismiss for failure to state a claim pursuant to Rule 12(b)(6). For the following reasons, the Court grants the motion to dismiss.

## BACKGROUND

Radus Tek is a professional services firm that specializes in technology, consulting, corporate training, staffing solutions, and software design and development. IDC is an information technology staffing and consulting business. TCS is a global leader in IT services, consulting, and business solutions.

TCS has a preferred partner program through which it contracts with companies like IDC to provide personnel for TCS projects.[1] IDC was formerly one of the companies in this program.

On December 19, 2019, Radus Tek entered into a professional services agreement with IDC pursuant to which Radus Tek would supply personnel to TCS for IT services that TCS

---

[1] Although TCS disputes Radus Tek's characterization of the partner program as a "preferred partner program," for purposes of TCS's Rule 12(b)(6) motion the Court must assume the truth of the allegations in Radus Tek's complaint.

provided to its client, Vanguard. Under this multi-tiered subcontracting structure, Vanguard contracted with TCS, which contracted with IDC, which contracted with Radus Tek. Through this arrangement, Radus Tek employees Syed Muhammed Raheel Hassan and Firoz Makati were staffed on projects for Vanguard. Radus Tek submitted invoices to IDC each month for the work that those employees performed, and IDC paid the amount of the invoices it received, often with some delays of up to a couple of months, which it sometimes blamed on TCS. Under its contract with IDC, Radus Tek was prohibited from communicating with IDC's clients, including TCS, for payment. Radus Tek had no contract with TCS.

Radus Tek alleges that IDC failed to pay fourteen overdue invoices for services rendered by Hassan and Makati from June 2023 through December 2023. Radus Tek alleges that IDC owes it $144,704 for those services. Radus Tek first contacted IDC about the unpaid invoices in November 2023. In March 2024, IDC responded via email, apologizing for the delay and explaining that the payment was not sent because of a failure in its vendor management system and its transition to a new financial institution. IDC did not communicate with Radus Tek again after that and did not pay the overdue invoices. Radus Tek alleges that IDC and its director, Prateek Gattani, have been misappropriating funds owed to Radus Tek and other subcontractors in an elaborate Ponzi scheme.

In 2023, TCS allegedly discovered a bribery scheme in which some of its employees had favored certain staffing firms over others and accepted payments in exchange for jobs. Radus Tek alleges that TCS responded by blacklisting certain firms, including IDC, but did not inform end-clients, subcontractors, or second-tier subcontractors about the status of those firms. Radus Tek alleges that TCS continued to hold out IDC as a preferred partner so as not to disrupt its business.

Radus Tek alleges that if it had known IDC was implicated in the bribery scheme, it would have taken steps to mitigate potential damages from IDC's failure to pay Radus Tek's invoices, such as by reassigning Hassan and Makati to other projects.

Radus Tek brings fourteen claims against IDC, Gattani, and TCS. The seven claims it brings against TCS are: (1) negligent hiring of an independent contractor; (2) negligent supervision of an independent contractor; (3) negligent retention of an independent contractor; (4)

1  negligent misrepresentation; (5) negligence; (6) fraudulent concealment; and (7) violation of
2  California's Unfair Competition Law (UCL).
3      TCS now moves to dismiss pursuant to Rule 12(b)(6).

### LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." If the complaint fails to state a claim, the defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### ANALYSIS

**A.   Negligence claim**

To prevail on a cause of action for negligence under California law, a plaintiff must establish: (a) the defendant's legal duty to use due and reasonable care; (b) a breach of such legal duty; and (c) that the breach is the proximate or legal cause of the resulting injury. *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996). "The threshold element of a cause of action for

3

negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 397 (1992). A duty of care may arise through statute, contract, or a special relationship between the parties. *Lichtman v. Siemens Industry, Inc.*, 16 Cal. App. 5th 914, 920 (2017). Generally, there is no duty of care where a separate legal remedy already exists. *Goonewardene v. ADP*, *LLC*, 6 Cal. 5th 817, 839 (2019) (explaining that where the law already provides "a full and complete remedy" for an injury, "the imposition of a separate tort duty of care … is generally unnecessary").

        Radus Tek and TCS had no contractual relationship and Radus Tek does not allege that TCS had any statutorily created duty of care. Radus Tek's theory is instead that TCS had a special relationship with Radus Tek giving rise to a duty of care. There are several factors (the "*Biakanja* factors") that courts consider to determine whether a special relationship exists, including: (a) the extent to which the transaction was intended to affect the plaintiff, (b) the foreseeability of the harm to the plaintiff, (c) the degree of certainty the plaintiff suffered injury, (d) the closeness of the connection between the defendant's conduct and the injury suffered, (e) the moral blame attached to defendant's conduct, and (f) the policy of preventing future harm. *See Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958). The purpose of the special relationship doctrine is to extend tort liability in circumstances where recovery might otherwise be impossible because the intended beneficiary of a transaction was not a party to it. *See, e.g.*, *Lucas v. Hamm*, 56 Cal. 2d 583, 588–89 (1961); *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979).

        Although the *Biakanja* factors appear to weigh against finding that a special relationship existed between TCS and Radus Tek, the Court need not undertake that analysis because a full and adequate remedy for Radus Tek's economic injury is already available at law. An action for breach of contract against IDC, which Radus Tek also brings here, provides an adequate legal remedy for IDC's alleged failure to pay the outstanding invoices.[2] Crucially, California law also includes various statutory and common law doctrines setting forth the circumstances under which

---

[2] The practical obstacle that IDC's potential insolvency might pose to Radus Tek's recovery, which Radus Tek raised at the hearing, has no bearing on whether an adequate remedy is available at law.

4

a third party like TCS may be found vicariously liable for a contracting party's breach. *See, e.g.*, Cal. Labor Code § 218.8 (making constructor contractors liable for certain wages owed to any subcontractor's employees); *Barrett v. Hammer Builders, Inc.*, 195 Cal. App. 2d 305, 317 (1961) (explaining that a corporation is liable for contracts entered into by its agent). To the extent that Radus Tek seeks to recover the damages resulting from IDC's contractual breach from TCS, it must rely on these existing doctrines of third-party liability. *Cf., e.g.*, *Goonewardene*, 6 Cal. 5th at 839 (declining to recognize negligence cause of action against payroll company that erroneously calculated an employee's wages because "California law already provides the employee with a full and complete remedy [against the employer] for any wage loss the employee sustains as a result of the payroll company's negligent conduct").

Because California law provides an adequate non-tort remedy for the contractual breach alleged here, Radus Tek fails to state a claim for negligence against TCS.

### B.     Negligent hiring, supervision, and retention claims

Under California law, the employees of an independent contractor are barred from asserting negligent hiring, supervision, and retention claims against the hirer of that contractor. *Camarago v. Tjaarda Dairy*, 25 Cal. 4th 1235, 1244 (2001). The two exceptions to that general rule are the special (or peculiar) risk doctrine and the retained control exception. Under the special risk doctrine, a person who hires an independent contractor to do inherently dangerous work can be held liable for tort damages when the contractor causes physical injury to others by negligently performing the work. *Toland v. Sunland Hous. Grp.*, Inc., 18 Cal. 4th 253, 256 (1998). Under the retained control exception, the hirer of an independent contractor may be liable for physical injury to an employee of the contractor if they retain control over the work and exercise that control in a way that affirmatively contributes to the injury. *Hooker v. Department of Transportation*, 27 Cal. 4th 198, 202 (2002).

Radus Tek concedes that the special risk doctrine, as it is conventionally understood, does not apply to TCS's conduct here because Radus Tek did not suffer a physical injury and the work that TCS hired IDC to do was not inherently dangerous under the established meaning of that term. But Radus Tek asks the Court to expand the special risk doctrine. Although the doctrine's

application is strictly limited to physical injuries, Radus Tek contends that the doctrine's rationale applies equally to certain high-risk business arrangements that create a foreseeable risk of harm to third parties. Radus Tek argues that the type of multi-tiered subcontracting relationship at issue here creates particular vulnerabilities that should be addressed by expanding the special risk doctrine, whose core policy purposes are compensating injuries, spreading risk to the party best able to bear it, and incentivizing proper safeguards.

Radus Tek may be correct that the type of multi-tiered subcontracting at issue here creates a high risk of foreseeable harm that existing tort doctrine is inadequate to remedy because such arrangements insulate from liability those parties most capable of bearing risk and preventing harm. But multi-tiered subcontracting is not the first business arrangement to create new financial risks that strain the ability of existing tort doctrine to appropriately allocate liability, and the special risk doctrine's physical injury requirement has nonetheless persisted. It is not this federal court's role to expand California tort liability beyond the limits articulated by the California legislature and California courts.

Radus Tek also argues that the retained control exception applies here. That doctrine is inapposite. It applies only when an *employee* of a contractor suffers a *physical injury*. Radus Tek meets neither of those requirements.

Accordingly, Radus Tek fails to state a claim for negligent hiring, supervision, and retention.

### C. Negligent misrepresentation claim

To state a claim for negligent misrepresentation, a plaintiff must allege: (1) a misrepresentation of material fact; (2) without reasonable grounds for believing it to be true; (3) intent to induce another's reliance; (4) justifiable reliance; and (5) resulting damage. *Majd v. Bank of Am.*, N.A., 243 Cal. App. 4th 1293, 1307 (2015).[3]

---

[3] Federal Rule of Civil Procedure 9(b) establishes a heightened pleading standard for fraud claims. Under Rule 9(b), a plaintiff must "specif[y] the time, place and specific content of the alleged fraudulent representation; the identity of the person engaged in the fraud; and the circumstances indicating falseness or the manner in which the representations were false and misleading." *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1123, 1134 (S.D. Cal. 2014) (cleaned

Radus Tek alleges that TCS misrepresented a material fact when it represented that IDC was a preferred partner, and therefore a trustworthy company, even though it knew IDC was involved in bribery and was no longer a preferred partner. According to Radus Tek, this representation occurred in two letters from TCS to the National Stock Exchange of India. In TCS's June 2023 letter, it stated that after learning of the alleged bribery scheme, TCS "launched a review to examine the allegations" and concluded that "(i) this does not involve any fraud by or against the Company and no financial impact; (ii) the issue relates to breach of Company's Code of Conduct by certain employees and vendors providing contractors; and (iii) no key managerial person of the Company has been found to be involved." In the October 2023 letter, TCS stated that it had concluded its investigation and, as a result, "6 vendor entities, their owners and affiliates have been debarred from doing any business with TCS." It also described steps TCS would take to enhance its governance measures.

Radus Tek does not plead facts to show that the statements TCS made in those letters were false. Radus Tek alleges that TCS terminated IDC's preferred partner status at some point after discovering the bribery scheme, and although Radus Tek *implies* that IDC was among the six vendor entities referenced in the October 2023 letter, it does not specifically allege as much. Nor

---

up). Additionally, "merely attributing a misrepresentation to a corporate entity is inadequate; a specific person must be named, or at least identified." *Id.* The Ninth Circuit has not decided whether Rule 9(b) applies to negligent misrepresentation claims, and district courts are split on the question. *Compare Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413 (C.D. Cal. 2012) (holding that negligent misrepresentation claims are not subject to the heightened pleading standards of Rule 9(b)), *and Bernstein v. Vocus, Inc.*, No. 14-cv-01561-TEH, 2014 WL 3673307, at *5 (N.D. Cal. July 23, 2014) (same), *with Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1270 (N.D. Cal. 2014) (holding that negligent misrepresentation claims are subject to the heightened pleading standards of Rule 9(b)), *and Microsoft Corp. v. Hon Hai Precision Indus. Co.*, 2020 WL 5128629, at *10 (N.D. Cal. Aug. 31, 2020) (same); *cf. Najarian Holdings LLC v. Corevest Am. Fin. Lender LLC*, 2020 WL 5993225, at *5 (N.D. Cal. Oct. 9, 2020) (cleaned up) ("The Ninth Circuit has not yet decided whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation, but most district courts in California hold that it does …. Also … two unpublished Ninth Circuit opinions have affirmed a district court's dismissal of negligent misrepresentation claims for failing to plead the circumstances surrounding the alleged misrepresentation with particularity."). The Court need not decide this question because Radus Tek fails to state a claim for negligent misrepresentation even under Rule 8's more liberal pleading standards.

1    does it allege that, at the time TCS sent the October 2023 letter to the National Stock Exchange of

2    India, it was untrue that six vendors had been barred from doing business with the company.

3    Because Radus Tek does not specifically allege *when* IDC's preferred partner status was

4    terminated, it does not specifically allege that any representation TCS made that IDC was a

5    preferred partner occurred after IDC was, in fact, no longer a preferred partner. Radus Tek thus

6    fails to allege that TCS made any misrepresentation.

7    Accordingly, Radus Tek fails to state a claim for negligent misrepresentation.[4]

### D. Fraudulent concealment claim

To state a claim for fraudulent concealment a plaintiff must allege that: (1) the defendant concealed or suppressed a material fact; (2) the defendant had a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with intent to defraud; (4) the plaintiff was unaware of the fact and would have acted differently if they had known; and (5) the plaintiff suffered damages as a result. *Marketing West, Inc. v. Sanyo Fisher Corp.*, 6 Cal. App. 4th 603, 612–13 (1992).

Absent a fiduciary relationship, a duty to disclose arises only when parties are in a relationship that "come[s] into being as a result of some sort of transaction." *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 311 (2017). "Such a transaction must necessarily arise from direct dealings between the plaintiff and the defendant; it cannot arise between the defendant and the public at large." *Id.* at 312. Such relationships include those between "seller and buyer, employer and prospective employee, doctor and patient, [and] parties entering into any kind of contractual arrangement." *Id.* at 311. The transaction about which parties have a duty to disclose material facts is the transaction giving rise to the relationship. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997).

Radus Tek contends that after TCS discovered the bribery scheme it had a duty to disclose to Radus Tek IDC's participation in that scheme, the eventual termination of IDC's preferred

---

[4] TCS contends that Radus Tek also fails to allege that TCS intended to induce Radus Tek's reliance on its alleged misrepresentation or that TCS did, in fact, induce that reliance. The Court need not reach those issues.

8

partner status, and its blacklisting at TCS. Radus Tek argues that TCS's duty to disclose that information to Radus Tek derived from TCS's ostensible agency relationship with IDC.[5] Ostensible agency requires three elements: (1) the principal must intentionally or negligently cause a third party to believe the agent has authority (2) the third party must reasonably believe in the agent's authority; and (3) the third party must detrimentally rely on that belief. *Associated Creditors' Agency v. Davis*, 13 Cal. 3d 374, 399 (1975). Here, Radus Tek maintains that TCS caused Radus Tek to believe IDC was its agent by continuing to hold out IDC as a preferred partner after it discovered the bribery scheme, that Radus Tek reasonably believed in IDC's authority, and that Radus Tek detrimentally relied on TCS's representation that IDC was its agent in conducting its business relationship with IDC.

The problem with Radus Tek's argument is that ostensible agency, like any other theory of agency, provides a means for holding a principal liable for the actions of its agent. That, however, is not what Radus Tek seeks to do through its fraudulent concealment claim. Radus Tek does not contend that TCS should be liable for fraudulent concealment undertaken by IDC. Instead, Radus Tek relies on its ostensible agency theory in seeking to hold TCS liable for its *own* alleged acts of fraudulent concealment. Radus Tek cites no California precedents suggesting that the existence of an ostensible agency relationship between a principal and an agent not only subjects the principal to liability for the agent's acts but also imposes upon the principal an affirmative duty to disclose certain information to third parties.

Further, Radus Tek has not alleged facts to show that, if TCS did conceal material facts about its relationship with IDC, it did so with an intent to defraud Radus Tek. Radus Tek alleges only that TCS generally wanted to ensure its business was not disrupted.

Accordingly, Radus Tek fails to state a claim for fraudulent concealment.

---

[5] Radus Tek proposes an additional novel theory that a special relationship between TCS and Radus Tek gives rise to a duty of disclose. But even if such a special relationship existed, which is dubious, the duty of care a plaintiff must show to prevail on a negligence claim is distinct from the duty of disclosure for fraudulent concealment.

9

### E. UCL claim

The UCL prohibits business practices that are: (1) unlawful; (2) unfair; or (3) fraudulent. Cal. Bus. & Prof. Code § 17200; *Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "Each 'prong' of the UCL provides a separate and distinct theory of liability." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) (quoting *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007)). The primary forms of relief available under the UCL are restitution and injunctive relief. *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012).

Radus Tek contends that TCS's alleged misrepresentation of IDC's preferred partner status after it terminated that status upon discovery of IDC's involvement in the bribery scheme violated the unlawful, unfair, or fraudulent prongs of the UCL. Radus Tek, however, has not pleaded facts sufficient to show that it is entitled to any form of relief available under the UCL.

To pursue injunctive relief under the UCL, a plaintiff must show that "there is [a] reasonable probability that the past acts complained of will recur." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 702 (2006). "An injunction will not be granted where at the time of the hearing conditions have so changed that no unlawful act is threatened." *Mallon v. City of Long Beach*, 164 Cal. App. 2d 178, 189 (Cal. Ct. App. 1958). Radus Tek has not alleged facts sufficient to show that there is a reasonable probability that TCS will misrepresent the preferred partner status of its contractors generally, or IDC in particular, in the future, or that Radus Tek will rely on that preferred partner designation in making business decisions, especially in light of the economic loss it allegedly suffered by relying on that designation in continuing to do business with IDC after its repeated failure to pay overdue invoices. Conditions have changed significantly since TCS's alleged misconduct: Radus Tek alleges that IDC is no longer a preferred partner of TCS; Radus Tek has ceased doing business with IDC, which allegedly faces more than 90 breach of contract cases in federal and state courts; and Radus Tek has now learned information that would reasonably prevent it from either contracting with IDC or relying on TCS's representations about the status of its subcontractors. *Cf. Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1080 (N.D. Cal. 2022) (cleaned up) ("Where a plaintiff learns information … that enables

her to evaluate product claims and make appropriate purchasing decisions going forward, injunctive relief would serve no meaningful purpose as to that plaintiff."). It is highly unlikely, and certainly not reasonably probable, that the harm Radus Tek allegedly suffered will recur. Radus Tek therefore lacks standing to seek injunctive relief.

As for restitution, it is IDC, not TCS, that allegedly failed to pay Radus Tek the funds it was owed. Radus Tek does not allege that TCS failed to pay IDC for the work completed by Radus Tek employees. It was IDC that failed to convey the funds to Radus Tek. IDC is thus the party purportedly in possession of the funds in which Radus Tek claims an ownership interest. Accordingly, IDC is the party from which Radus Tek could seek restitution under the circumstances here. Relief under the UCL, however, is only available where legal remedies are inadequate, and Radus Tek has not shown that its contractual claim against IDC is legally inadequate. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020); *Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1193 (S.D. Cal. 2023) ("[W]here monetary damages provide an adequate remedy, a federal court may not consider the merits of equitable claims for restitution."). To the contrary, the legal claims it brings against IDC in this litigation indicate precisely the opposite.

Accordingly, Radus Tek fails to state a claim for violation of the UCL.

## CONCLUSION

For the foregoing reasons, the Court grants TCS's motion to dismiss. Radus Tek may file an amended complaint within 21 days of this order.

**IT IS SO ORDERED.**

Dated: February 24, 2025

_____
P. Casey Pitts
United States District Judge